UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:23-CV-357-DJH

*Electronically Filed*

SCOTTSDALE INSURANCE COMPANY, and                    PLAINTIFFS
MENTAL HEALTH RISK RETENTION GROUP


v.              **MEMORANDUM OF LAW IN SUPPORT OF**
                **MOTION FOR SUMMARY JUDGMENT**
                **OF PLAINTIFFS,**
                **SCOTTSDALE INSURANCE COMPANY AND**
                **MENTAL HEALTH RISK RETENTION GROUP**


SEVEN COUNTIES SERVICES, INC.                          DEFENDANT


                  ***    ***    ***    ***    ***

Come the Plaintiffs/Counterdefendants, Scottsdale Insurance Company ("Scottsdale") and Mental Health Risk Retention Group ("MHRRG"), by counsel, and pursuant to Rule 56 of the Federal Rules of Civil Procedure and this Court's Scheduling Order (DE 24), respectfully tender this memorandum of law in support of their Motion for Summary Judgment on their claims for a declaration of rights against Defendant/Counterclaimant, Seven Counties Services, Inc. ("Seven Counties"), and on Seven Counties' counterclaims for breach of contract.

## I. INTRODUCTION

This action arises from the tragic death of a minor in the care of a psychiatric residential treatment facility that received management and administrative services from Seven Counties. Seven Counties claimed coverage for the incident and related

wrongful death claims under MHRRG Policy No. COP0002056 and Scottsdale Excess Liability Policy No. XLS0120676.   Both policies, however, unambiguously exclude coverage for professional services of the type that precipitated the injury at issue. Moreover, any insurance provided under these policies is expressly excess to the insurance provided to Seven Counties under Hanover Insurance Company Policy No. ZHW A670296 07.

There remain no issues of material fact necessary to determine the parties' rights under the three policies at issue.  As this memorandum demonstrates, Scottsdale and MHRRG are entitled to judgment in their favor as a matter of law on all claims asserted herein.  See Fed. R. Civ. P. 56(a).

## II.  STATEMENT OF UNDISPUTED FACTS

### A.   Seven Counties Provided Management Services to Uspiritus, Inc. in Connection with the Brooklawn Facility, a Residential Psychiatric Treatment Facility for Children.

Seven Counties, formerly known as Centerstone of Kentucky, Inc. and SCS Learning, Inc., is a non-profit corporation located in Louisville, Kentucky.  [See Answer and Counterclaim of Defendant Seven Counties Services, Inc. ("Answer and Counterclaim"), DE 15, Page ID#: 543, ¶ 1.]  Seven Counties is a community mental health organization that offers mental and behavioral health services, substance abuse treatment, and intellectual and developmental disability services.  [Id. at Page ID#: 544, ¶ 9.]

Nonparty Uspiritus, Inc. ("Uspiritus") is a Kentucky corporation that provides an array of services for children, including psychiatric residential treatment, therapeutic foster care, and adoption services.  [Id. at Page ID#: 531, ¶ 10; Complaint and Petition

for Declaratory Judgment ("Complaint"), DE 1, Page ID#: 3, ¶ 10.]  Uspiritus owns and operates Bellewood Home for Children and Brooklawn Child & Family Services (collectively "Brooklawn"), which is a residential psychiatric treatment facility for children in Louisville, Kentucky (the "Brooklawn Facility").  [Complaint, DE 1, Page ID#: 3, ¶¶ 12-13; Answer and Counterclaim, DE 15, Page ID#: 532, ¶¶ 12-13.]

At all times relevant to this action, Seven Counties and Uspiritus shared a contractual relationship wherein Seven Counties provided certain management and administrative services to Uspiritus, including services related to the Brooklawn Facility. [Complaint, DE 1, Page ID#: 3, ¶ 14; Answer and Counterclaim, DE 15, Page ID#: 532, ¶ 14.]  This relationship dates at least as far back as June 18, 2018, when Seven Counties, then known as Centerstone of Kentucky, Inc., and Uspiritus entered into a Management Services Agreement.   [See June 18, 2018 Management Services Agreement, attached as **Exhibit 1**.]  This agreement was subsequently renewed on or about June 25, 2019, through a Second Amended and Restated Management Services Agreement, which was subject to an amendment in December 2020.[1]  [See June 25, 2019 Second Amended and Restated Management Services Agreement, DE 1-1, Page ID##: 18-41; Dec. 21, 2020 Second Amendment to the Second Amended and Restated Management Services Agreement, attached as **Exhibit 2**.]

By its terms, the Management Services Agreement expired on December 31, 2021, however, "Uspiritus and Seven Counties Services mutually agreed to renew and continue the Management Services Agreement, as amended, in full force and effect indefinitely."  [May 9, 2023 Email from Seven Counties, attached as **Exhibit 3;** Answer

---

[1] The June 25, 2019 Second Amended and Restated Management Services Agreement together with its December 2020 amendment are referred to herein as the "Management Services Agreement."

and Counterclaim, DE 15, Page ID#: 535, ¶ 35 ("Seven Counties admits [it] continued to provide management services to Uspiritus . . . despite the expiration of the Management Services Agreement.").]

**B.    The July 17, 2022 Incident at the Brooklawn Facility.**

On July 17, 2022, while the Management Services Agreement was in effect, a seven-year old minor child, J.T., tragically died in the care of the Brooklawn Facility (the "Incident").  [See Notice of Occurrence, DE 1-4, Page ID##: 451-52.]  J.T. was a new resident of the Brooklawn Facility receiving juvenile residential services provided by Uspiritus.  [See Answer and Counterclaim, DE 15, Page ID#: 535, ¶ 35 ("Seven Counties admits that J.T. was a juvenile resident of the Brooklawn facility at the time of his death, [and] that all of the individuals caring for J.T. at the time of his death were employees of Uspiritus[.]"); July 1, 2022 Letter from MHRRG, DE 1-7, Page ID#: 466 ("When we spoke on December 15, 2022, you confirmed that [J.T.] was receiving Juvenile Residential Services, provided exclusively by Uspiritus.").]

On the morning of the Incident, staff reported that J.T. had been "misbehaving." [Office of Inspector General Statement of Deficinecies, attached hereto as **Exhibit 4**, p. 5.]  As a result, Deborah Francis ("Francis"), a Uspiritus employee and shift supervisor, unilaterally determined to seclude J.T. in his bedroom for the first half of the day.  [Id.] At or around 2:25 p.m., after J.T. repeatedly attempted to come out of seclusion and threatened to throw a plastic water bottle at Uspiritus employee Amanda Whitlow ("Whitlow"), Uspiritus employee Jillian Parks ("Parks") physically restrained J.T.'s upper extremities using an Emergency Safety Intervention ("ESI") technique known as a kneeling cradle, while Whitlow secured J.T.'s lower extremities.  [See July 18, 2022

Youth Physical Hold/Seclusion Report, attached as **Exhibit 5**; Statement of Deficiencies, Ex. 4, pp. 29-30.] Moments after the physical hold began, Francis took Parks' place and resumed the kneeling cradle. [Id.] J.T. vomited and began crying at some point during the physical hold. [Id.] Francis, however, did not release the restraint until J.T. lost consciousness. [Id.] Once they realized he was unresponsive, Francis and Parks performed cardiopulmonary resuscitation and instructed Whitlow to call 911. [Id.] Emergency personnel arrived shortly following. [Id.] J.T. was then transported to Norton's Children's Hospital, where he was pronounced dead later that afternoon. [Id.]

The Jefferson County Medical Examiner ruled J.T.'s death a homicide caused by respiratory failure due to asphyxiation.[2] Uspiritus suspended Francis, Parks, and Whitlow on or about July 20, 2022, and terminated Francis's and Parks' employment on August 19, 2022. [See Statement of Deficinecies, Ex. 4, p. 31.]

## C.   Any Use of Emergency Safety Intervention Requires Specialized Training and Judgment.

The use of ESI in a psychiatric residential treatment facility for children between the ages of six and twenty-one is governed by 902 KAR 20:320, which defines ESI as "the use of restraint," including a kneeling cradle, "or seclusion . . . as an immediate response to an emergency safety situation." 901 KAR 20:320, Section 1 (12)-(13). "Emergency safety situation," in turn, is defined as "unanticipated resident behavior that places the resident or others at serious threat of violence or injury if no intervention occurs[.]" Id.

---

[2] See *Death of 7-year-old boy at Brooklawn children's center ruled homicide, two workers fired*, COURIER JOURNAL (Sept. 16, 2022), attached hereto as **Exhibit 6**.

Section 15 of 902 KAR 20:320 permits ESI only when (1) necessary to "ensure the safety of the resident," and (2) ordered by "a physician or other licensed practitioner . . . who is trained in the use of emergency safety interventions." Id. at Section 15 (1), (4). When ordered, the regulation requires any staff member who implements ESI to:

(a) Have documented training in the proper use of the procedure used;

(b) Be certified in physical management by a nationally-recognized training program in which certification is obtained through skills-based testing; and

(c) Receive annual training and recertification in crisis intervention and behavior management.

Id. at Section 15 (12).

The Office of the Inspector General[3] released a 122-page Statement of Deficiencies following a thorough investigation of the Incident which concluded that Uspiritus violated a number of licensing requirements for psychiatric residential treatment facilities through, among other things, its staff members' impermissible determination to seclude J.T. in the hours leading up to the Incident; failure to acquire a physical hold order from a physician or licensed practitioner prior to rendering ESI; and failure to perform the kneeling cradle pursuant to required training. [Statement of Deficiencies, Ex. 4, pp. 5, 22-23, 29.]

**D.    Seven Counties was an Additional Insured at the Time of the Incident Under Hanover Insurance Company Policy No. ZHW A670296 07.**

At the time of the Incident, Uspiritus was insured under Hanover Insurance Company ("Hanover") Policy No. ZHW A670296 07 (the "Hanover Policy"). [Hanover

---

[3] The Office of the Inspector General is the "regulatory and licensing agency for all health care, day care and long-term care facilities and child adoption/child-placing agencies in the commonwealth." *Office of the Inspector General*, KENTUCKY CABINET FOR HEALTH AND FAMILY SERVICES, https://www.chfs.ky.gov/agencies/os/oig/Pages/default.aspx.

Policy, DE 1-2, Page ID##: 42-360.]  The Hanover Policy carried Commercial General Liability Coverage and Human Services Professional Liability Coverage with limits of liability of $1,000,000 per occurrence and $3,000,000 per yearly aggregate.  [Id. at Page ID##: 58, 67.]

The Hanover Policy complied with the Management Services Agreement, which required Uspiritus to maintain adequate insurance that listed Seven Counties as an additional insured and insured Seven Counties on a primary basis:

> **12.1  Uspiritus Required Insurance**.  . . . Uspiritus shall, at the Uspiritus's sole cost and expense, obtain and maintain with commercial carriers reasonably acceptable to Manager, appropriate insurance coverage, including but not limited to, . . . (b) professional liability, including but not limited to Operations, outpatient services, clinics, employed physicians and other patient care or resident care activities in the minimum amount of $1,000,000 per occurrence and $3,000,000 in the aggregate;  . . . (d) comprehensive general liability insurance providing coverage for bodily injury and property damage arising in connection with Uspiritus's Operations in the minimum amount of $1,000,000 per occurrence and $3,000,000 in the aggregate . . ..

> **12.2 Additional Insured; Other Terms**.  All insurance maintained by Uspiritus pursuant to Section 12.1 shall . . . name Manager, its directors, officers, employees and agents as additional insureds . . ..  Such insurance policies shall contain endorsements which reflect the primary liability of Uspiritus's insurance carrier for all covered losses provided for herein, notwithstanding any insurance which may be maintained by Manager or any affiliate of Manager.  Uspiritus hereby waives any right of contribution against Manager . . . with respect to the loss covered under such policies . . . against Manager or any of Manager's insurance carriers. The right of Manager to invoke the protection of such policies shall be severable from and independent of Uspiritus's rights.

[Management Services Agreement, DE 1-1, Article XII Insurance, Page ID#: 28.]

As a result of this language, Seven Counties qualifies as an "additional insured" under the Hanover Policy:

**SECTION III—Who Is an Insured or Additional Insured**

. . .

**C.** A person or organization with whom you agreed in a written contract, written agreement or permit to provide insurance, is an Additional Insured only with respect to liability for "damages" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf, in the performance of your professional services as a human services organization for that Additional Insured.

However, the insurance afforded to such Additional Insured only applies:

1. To the extent permitted by law;

2. If the "claim" against the Additional Insured arises out of a "wrongful act" to which this insurance applies; and

3. The "wrongful act" must take place subsequent to the execution of the written contract or written agreement or the issuance of the permit.

[Hanover Policy, DE 1-2, Page ID#: 307.]

The relevant provisions, conditions, and definitions of the Hanover Policy state as follows:

**SECTION I – COVERAGES**

**A. Insuring Agreement**

1. We will pay on behalf of the insured those sums the insured becomes legally obligated to pay as "damages" arising out of a "wrongful act" to which this insurance applies.

. . .

**SECTION V – CONDITIONS**

**E. Other Insurance**

If other valid and collectible insurance is available to the insured for "damages" we cover under this Coverage Part, our obligations are limited as follows:

**1. Primary Insurance**

This insurance is primary except when 2. below applies.  If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary.  Then we will share with all that other insurance by the method described in 3. below.

**2.  Excess Insurance**

a.  This insurance is excess over any other valid and collectible insurance, whether primary, excess, contingent or on any other basis available:

**(1)**  To your "employee" or volunteer who has other insurance covering his or her professional liability; or

**(2)**  That you have purchased from a company other than us or a company affiliated with us which is more specific than this insurance.

**SECTION VI – DEFINITIONS**

. . .

**C.  "Claim"** means:

1.  A written demand for "damages"; or
2.  A "suit" against an insured for a "wrongful act" to which this insurance applies.

**E.  "Damages"** means a compensatory monetary award, settlement or judgment that the insured is legally obligated to pay, including costs and attorney's fees awarded pursuant to a judgment.

. . .

**Q.  "Wrongful act"** means any actual or alleged negligent act, error, omission, or breach of duty in the rendering of or failure to render professional services to others, including counseling services, educational instruction and teaching, in your capacity as a human services organization, including the furnishing of

> food, beverages, medications or appliances in connection
> therewith.

[Id. at Page ID##: 300, 309, 311-12.]

**E.    Seven Counties Maintained Insurance Under MHRRG Policy No.
COP0002056 and Scottsdale Excess Liability Policy No. XLS0120676 at the
Time of the Incident, Subject to the Terms, Provisions, Exclusions, and
Conditions of the Policies.**

At the time of the Incident, Seven Counties was also insured under MHRRG

Policy No. COP0002056 (the "MHRRG Policy") and Scottsdale Excess Liability Policy

No. XLS0120676 (the "Scottsdale Policy").   [MHRRG Policy, DE 1-3, Page ID##: 361-

450; Scottsdale Policy, DE 23-3, Page ID##: 1086-1110.]   The MHRRG Policy contains

a Commercial General Liability Coverage Part and a Professional Liability Coverage

Part, both with limits of liability of $1,000,000 per occurrence and $3,000,000 in the

yearly aggregate.   [MHRRG Policy, DE 1-3, Page ID##: 364, 415.]   The Scottsdale

Policy, which provided $5,000,000 per occurrence and $5,000,000 in the yearly

aggregate, provided excess coverage under the same terms, conditions, exclusions,

and endorsements of the MHRRG Policy.   [Scottsdale Policy, DE 23-3, Page ID#:

1086.]

The Commercial General Liability Part of the MHRRG Policy expressly excludes

coverage for injuries arising from professional services:

> **Section I—COVERAGES**
>
> > **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE
> > LIABILITY**
> >
> > . . .
> >
> > **2. Exclusions**
> >
> > > This insurance does not apply to:

. . .

**s. Professional**

> "Bodily injury" or "property damage" due to the rendering or failure to render any professional service.

[Id. at Page ID#: 394, 398.]

"Professional services," in turn, are insured under the Professional Liability Part of the MHRRG Policy, which covers "sums that the insured becomes legally obligated to pay as **DAMAGES** because of injury as a result of a **WRONGFUL ACT**," which is defined to include "any act, error or omission in the furnishing of professional health care services." [Id. at Page ID##: 438-39, 443.] Crucial here, the Professional Liability Coverage Form is modified by a Limitation of Services Endorsement that excludes coverage for injuries arising from juvenile residential services and/or any services provided by Uspiritus:

**LIMITATION OF SERVICES ENDORSEMENT**

This endorsement modifies insurance provided under the following:

**PROFESSIONAL LIABILITY COVERAGE PART**

1. This insurance does not apply to:

    a. The following services:
       i. Foster Care Services;
      ii. Child Welfare Services;
     iii. Family Preservation Services;
     iv. Juvenile Residential Services; or
      v. Any services provided by Uspiritus.

    b. Any **WRONGFUL ACT** of any employee, or any insured providing services listed in a. above. However, this exclusion does not apply to incidental Foster Care Case Management Services provided by employees of the

> Named insured or on a short-term emergency basis as support for a <u>Uspiritus</u> shortage.
>
> . . .

[<u>Id</u>. at Page ID#: 430.]

Moreover, the Limitation of Services Endorsement makes clear that the insurance provided under the MHRRG Policy is excess to any coverage provided to Uspiritus under which Seven Counties is an additional insured:

> 2. Specific to the exception to exclusion 1.b. above:
>
> This insurance is excess over any other valid and collectible insurance available to any insured for a loss we cover. This insurance is specifically excess over any coverage whereby the Named Insured has Additional Insured status under insurance provided by or issued to <u>Uspiritus</u>.

[<u>Id</u>.]

The Scottsdale Policy insured Seven Counties on an excess basis under the same terms, conditions, exclusions, and endorsements excerpted above. [Scottsdale Policy, DE 23-3, Page ID##: 1086-1110.]   It provides, in pertinent part:

**INSURANCE AGREEMENTS**

**I.      COVERAGE**

> This Policy is excess insurance and, except as otherwise stated in this Policy, follows the terms, conditions, exclusions, definitions and endorsements of the "Underlying Insurance" described in Item 5. of the Declarations.
>
> A.      We will pay on behalf of the insured those sums in excess of the "Underlying Insurance" which the insured becomes legally obligated to pay as damages arising out of an occurrence or accident during the policy period stated in ITEM 2. of the Declarations (the POLICY PERIOD).

B.   We have no other obligation or liability to pay sums or perform services, except as described in Section II, Defense and Supplementary Payments.

C.   If we are prevented by law or statute to pay on behalf of the insured, we will, in accordance with A. and B. above, indemnify the insured for those sums in excess of the "Underlying Insurance."

D.   Where any terms of this Policy conflict with any terms of the "Underlying Insurance," the terms of this Policy shall apply.

E.   Settlement of any claim or suit for an amount in excess of available "Underlying Insurance" by your or any underlying insurer shall not be binding on us unless we consent in writing.

[Id. at Page ID##: 1086, 1101.]

**F.   Seven Counties' Claim for Coverage Under the MHRRG Policy and Scottsdale Policy for the Incident and Related Wrongful Death Action.**

On August 12, 2022, Seven Counties submitted a notice of loss ("Notice of Occurrence") under the MHRRG Policy to Scottsdale and MHRRG arising from the Incident.  [Notice of Occurrence, DE 1-4, Page ID##: 451-52.]   At the time of the Notice of Occurrence, however, no claim or allegation of wrongful act had been asserted against Seven Counties.  [See id.; Complaint, DE 1, Page ID#: 5, ¶ 28.]  On August 24, 2022, and again on November 28, 2022, Scottsdale and MHRRG sent Seven Counties a letter denying the Notice of Occurrence because no claim had been made against Seven Counties and no wrongful act had been identified.  [See Aug. 24, 2022 Letter, which is identical to the November 28, 2022 Letter, DE 1-5, Page ID##: 453-55.]

On or about September 16, 2022, the Estate of J.T. asserted claims against Uspiritus arising from the Incident in an action entitled *Estate of (J.T.), by and through Co-Administratrices, Michelle Andrews and Misty Andrews v. Uspiritus, Inc. d/b/a*

*Bellewood and Brooklawn*, Civil Action No. 22-CI-4824, Jefferson Circuit Court (the "Wrongful Death Action"). [Complaint, DE 1-1, Page ID#: 6, ¶ 30.]   No claims were made against Seven Counties in the Wrongful Death Action until December 21, 2022, when the Estate of J.T. filed a First Amended Complaint that asserted claims against Seven Counties for wrongful death, negligence, and negligent hiring, training, supervision, and retention (the "Wrongful Death Complaint").  [See Wrongful Death Complaint, DE 1-6, Page ID##: 456-465.]

Seven Counties forwarded the Wrongful Death Complaint to MHRRG on or about December 14, 2022, again seeking coverage under the MHRRG Policy and Scottsdale Policy.  [See Jan. 19, 2023 MHRRG Letter, DE 1-7, Page ID#: 466.]  The Wrongful Death Complaint alleged that on July 17, 2022, J.T. was in the care of the Brooklawn Facility, where he was receiving "foster care placement services and/or psychiatric residential treatment services" and "intensive therapeutic support" from Uspiritus when "Unknown Individual Defendants, agents or employees of the named Defendants and/or other Unknown Entity Defendants assaulted and physically restrained" J.T., causing him to suffer "positional asphyxiation rendering him unconscious."  [Wrongful Death Complaint, DE 1-6, Page ID#: 462, ¶¶ 24-27.]

Because the Wrongful Death Claims involved professional services, MHRRG and Scottsdale assessed coverage under the Professional Liability Coverage Part of the MHRRG Policy.  [Complaint, DE 1, Page ID#: 5, ¶ 26.]  On January 19, 2023, and again on February 20, 2023, Scottsdale and MHRRG sent a letter to Seven Counties advising there was no coverage pursuant to the Limitation of Services Endorsement, which excludes coverage for occurrences arising from the provision of Child Welfare Services,

Juvenile Residential Services, and services provided by Uspiritus.  [See Jan. 19, 2023 Letter, DE 1-7, Page ID##: 466-69; Feb. 20, 2023 Letter, DE 1-8, Page ID##: 470-71.]

Seven Counties responded on March 2, 2023, asserting that although "[w]e do not dispute [the] conclusion that there is no coverage for the [Incident] under the Policy's Professional Liability Coverage Part," the "circumstances of [the Incident] do not involve or arise out of the provision of behavioral health care services by Seven Counties," thus, the Commercial General Liability Part of the Policy was triggered by the Incident and not the Professional Liability Coverage Part.  [See March 2, 2023 Letter, DE-1-9, Page ID##: 472-82.]  Scottsdale and MHRRG sent a supplemental coverage position letter to Seven Counties on April 13, 2023 reaffirming their previous position. [See April 13, 2023 Letter, DE 1-10, Page ID##: 483-92.]

**G.    Settlement of the Wrongful Death Action.**

The parties to the Wrongful Death Action held a mediation on or about May 11, 2023.  [See Answer and Counterclaim, DE 15, Page ID#: 548, ¶ 24.]  In advance of the mediation, Scottsdale and MHRRG sent a second supplemental coverage position letter to Seven Counties which advised Seven Counties to "pursue the primary insurance coverage afforded to it by [Hanover]."  [See May 4, 2023 Letter, DE 1-11, Page ID#: 493.]

The mediation resulted in a global settlement of the Wrongful Death Action. [Answer and Counterclaim, DE 15, Page ID#: 537, ¶¶ 42-43 ("Seven Counties admits that the [Wrongful Death Action] was resolved through a mediated settlement.").]  Seven Counties and Uspiritus split the settlement amount, with Hanover paying Uspritus's portion pursuant to the Hanover Policy.  [Id. ("Seven Counties admits that Hanover paid

Uspritus's portion of the settlement of the [Wrongful Death Action]."].]  As part of the settlement, Seven Counties executed a release of all claims arising from the Incident against Uspiritus and Hanover but expressly reserved the right to pursue reimbursement from MHRRG and/or Scottsdale.  [Id. at ¶¶ 44-45.]

## H.   Procedural History.

To resolve Seven Counties' entitlement to coverage under the MHRRG and Scottsdale Policies, MHRRG and Scottsdale filed this action against Seven Counties on July 12, 2023 seeking a declaration pursuant to 28 U.S.C. § 2201 that coverage is not available under the terms, conditions, exclusions, and endorsements of the MHRRG Policy, and that Seven Counties was insured on a primary basis by the Hanover Policy. [See generally, Complaint, DE 1, Page ID##: 1-16.]  In return, Seven Counties asserted counterclaims for breach of the MHRRG and Scottsdale Policies.   [Answer and Counterclaim, DE 15, Page ID##: 543-52.]  MHRRG and Scottsdale later filed a First Amended Complaint and Petition for Declaratory Judgment, seeking an additional declaration of rights under the Scottsdale Policy.  [First Amended Complaint, DE 28, Page ID##:  1121-27.]

MHRRG and Scottsdale now move for summary judgment because there is no dispute as to any material fact, and they are entitled to judgment as a matter of law.

### III.  ARGUMENT

1.   <u>**Kentucky's Legal Standards for the Interpretation of Insurance Contracts.**</u>

Interpretation of an insurance contract is a matter of law for a court to decide. <u>Stone v. Ky. Farm Bureau Mut. Ins. Co</u>., 34 S.W.3d 809, 810 (Ky. App. 2000). The Court begins with the text of the policy itself, affording the terms their plain and ordinary

meaning.  Id. at 811; Pryor v. Colony Ins., 414 S.W.3d 424, 430 (Ky. App. 2013).  The Court "'must give effect to what the parties expressly agreed upon'" as opposed to "'placing [its own] strained interpretation[.]'" Nationwide Mut. Ins. Co. v. Nolan, 10 S.W.3d 129, 131 (Ky. 1999) (quoting Stucker v. College Life Insurance Company of America, 208 N.E.2d 731, 739 (Ind. App. 1965).  Here, the pertinent terms, conditions, and exclusions of the policies at issue, discussed in detail below, are unambiguous.  Accordingly, they should be strictly construed, and coverage under the MHRRG Policy and Scottsdale Policy should be denied.  Id.

## 2. The Undisputed Facts of the Wrongful Death Action Do Not Qualify for Coverage Under the MHRRG Policy or Scottsdale Policy.

Because it is undisputed that the Incident and Wrongful Death Action arose from the failure of one or more employees of Uspiritus to appropriately and safely administer an ESI technique in a juvenile residential facility, coverage does not exist under the unambiguous terms, conditions, exclusions, and endorsements of the MHRRG Policy and, as a result, does not exist under the Scottsdale Policy.  As the following discusses in detail, MHRRG and Scottsdale are therefore entitled to a declaration of rights in their favor in addition to summary dismissal of Seven Counties' breach of contract claims.  See Fed. R. Civ. P. 56(a).

### 1. The claims asserted against Seven Counties in the Wrongful Death Action arose from bodily injury caused by the rendering of a professional service, therefore, coverage is excluded under the Commercial General Liability Part of the MHRRG Policy.

First, the Commercial General Liability Part of the MHRRG Policy expressly excludes coverage for "'[b]odily injury . . . due to the rendering or failure to render any professional service." [MHRRG Policy, DE 1-3, Page ID#: 398.]  The circumstances of

J.T.'s death fall squarely within this exclusion.  Because Kentucky law is clear that policy exclusions should "'be enforced as written,'" MHRRG and Scottsdale are entitled to a finding that coverage is excluded under the Commercial General Liability Part of the MHRRG Policy.  Atl. Specialty Ins. Co. v. Stanley, No. 19-5259, 2019 U.S. App. LEXIS 25501, at *6 (6th Cir. Aug. 23, 2019) (quoting Kemper Nat'l Ins. Cos. v. Heaven Hill Distilleries, Inc., 82 S.W.3d 869, 873 (Ky. 2002)).

Though the term "professional service" is undefined in the MHRRG Policy, Kentucky law instructs that it must be interpreted pursuant to its ordinary meaning. Alvey v. State Farm Fire & Cas. Co., 361 F. Supp. 3d 703, 709-710 (W.D. Ky. 2019); State Farm Mut. Ins. Co. v. Fireman's Fund Am. Ins. Co., 550 S.W.2d 554, 557 (Ky. 1977) (holding insurance policies to be governed by the principles of contract law).  As the Sixth Circuit has previously noted, where undefined, Kentucky courts construe the term "professional service" in an insurance policy to mean a service that requires the "**exercise of judgment or training**."  DiBeneditto v. Medical Protective Co., 3 Fed. Appx. 483, 486-487 (6th Cir. 2001) (citing Ratliff v. Employers' Liability Assur. Corp., 515 S.W.2d 225, 230 (Ky. App. 1974)) (emphasis added).

In Ratliff, for example, a psychiatric hospital's general liability policy excluded coverage for injuries arising from the provision of "professional services," which was undefined under the policy.  515 S.W.2d at 229-30.  The plaintiff, an acute alcoholic, fell and suffered a leg injury after two nurses gave him medication and allowed him to walk unassisted to his room.  Id. at 227.  He successfully sued the hospital for negligence, and subsequently sued the hospital's general liability carrier to recover his award of damages.  Id. at 226. In defining "professional service" as used in the subject policy, the

Court of Appeals of Kentucky interpreted the term to mean a service that requires professional training or the exercise of professional judgment. Id. at 229.

The Court in Ratliff relied partially on Marx v. Hartford Accident & Indemnity Company, 157 N.W.2d 870, 872 (Neb. 1968), a case in which the Nebraska Supreme Court held that "in determining whether a particular act is of a professional nature or a 'professional service[,]' we must look *not* to the title or character of the party performing the act, but to the act itself." (emphasis added).  In looking to the wrongful act at issue in Ratliff, the Court concluded that the plaintiff's injury involved professional services because the negligence of the hospital was based upon the nurses' failure to recognize the patient's debilitated condition, which was a determination that required professional judgment. Id. at 230.  Thus, coverage under the general liability policy at issue in Ratliff was excluded.  Id.

This Court applied Ratliff in Massachusetts Bay Insurance Company v. Preferred Safety, LLC, 2020 U.S. Dist. LEXIS 125757, *13-14 (W.D. Ky. July 15, 2020).  Therein, the insurer sued its insured seeking a declaration that it did not owe a duty to defend or indemnify the insured for an underlying lawsuit involving allegations that a personal injury arose as a result of the insured's negligence in carrying out its obligations as the safety consultant for structural steel work.  Id. at *3-4.  The insurer argued that an exclusion for bodily injury "caused by the rendering of or a failure to render any professional Service" precluded coverage under the policy.  Id. at *8.  To determine whether the injury involved a "professional service," this Court reasoned that it must look to the "specific act that allegedly caused [the] injury" to determine whether the act required "'an exercise of judgment or training.'"  Id. at *13-14.  Because the actions at

issue required experience and judgment, this Court concluded in <u>Safety</u> that there was no coverage under the policy's professional services exclusion.  <u>Id</u>. at *14.

When these cases are applied here, it is clear that the Incident involved professional services.  Indeed, the Wrongful Death Action arose directly from staff members' failure to appropriately determine that an ESI technique was necessary and their failure to safely render a kneeling cradle.  [<u>See</u>, <u>generally</u>, Wrongful Death Complaint, DE 1-6, Page ID##: 457-65.]   Knowing when to use ESI and the proper administration of ESI certainly requires specialized training and judgment.  <u>See</u> <u>Ratliff</u>, 515 S.W.2d at 229-30.  A kneeling cradle is an ESI technique that, as a matter of black and white Kentucky law, must be ordered by "a physician or other licensed practitioner . . . who is trained in the use of emergency safety interventions" and must be carried out by an individual who has "documented training in the proper use of the procedure used"; is "certified in physical management by a nationally-recognized training program in which certification is obtained through skills-based testing"; and "receive[s] annual training and recertification in crisis intervention and behavior management."  902 KAR 20:320, Section 15 (1), (4), (12).

Thus, the undisputed facts establish that the injury at issue was caused by the rendering of a "professional service."  <u>See</u> <u>Ratliff</u>, 515 S.W.2d at 229-30.  MHRRG and Scottsdale are therefore entitled to a finding that no coverage exists under the Commercial General Liability Part of the MHRRG Policy.  [MHRRG Policy, DE 1-3, Page ID#: 398.]

**2.    The claims asserted against Seven Counties in the Wrongful Death Action arose from the provision of juvenile residential services provided by Uspiritus, therefore, coverage is excluded by the Limitation of Services Endorsement to the Professional Liability Part of the MHRRG Policy.**

Second, there is no genuine dispute that coverage is excluded under the Limitation of Services Endorsement of the Professional Services Part of the MHRRG Policy, which unambiguously precludes coverage for "Juvenile Residential Services" and "[a]ny services provided by Uspritus[.]"  [MHRRG Policy, DE 1-3, Page ID#: 430.] Seven Counties has not and cannot dispute that the services provided to J.T. at the time of his death were juvenile residential services provided by Uspiritus.  [See Answer and Counterclaim, DE 15, Page ID#: 535, ¶ 35 ("Seven Counties admits that J.T. was a juvenile resident of the Brooklawn facility at the time of his death, [and] that all of the individuals caring for J.T. at the time of his death were employees of Uspiritus[.]"); July 1, 2022 MHRRG Letter, DE 1-7, Page ID#: 466 ("When we spoke on December 15, 2022, you confirmed that [J.T.] was receiving Juvenile Residential Services, provided exclusively by Uspiritus.").]

MHRRG and Scottsdale are therefore entitled to a declaration that they did not have an obligation to defend or indemnify Seven Counties in connection with the Incident or the Wrongful Death Action under the Professional Liability Part of the MHRRG Policy.  [MHRRG Policy, DE 1-3, Page ID#: 430.]  Indeed, Seven Counties so much as conceded Scottsdale and MHRRG's entitlement to summary judgment in response to Scottsdale and MHRRG's February 20, 2023 declination letter: "We do not dispute [the] conclusion that there is no coverage for the Claim under the Policy's Professional Liability Coverage Part."  [March 2, 2023 Letter, DE 1-9, Page ID#: 472.]

3.    **Without coverage under the MHRRG Policy, there is no coverage under the Scottsdale Policy.**

The Scottsdale Policy is a following policy, meaning that its terms of coverage mirror those in the MHRRG Policy.  [Scottsdale Policy, DE 23-3, Page ID##: 1101 ("This Policy is excess insurance and, except as otherwise stated in this Policy, follows the terms, conditions, exclusions, definitions and endorsements of the 'Underlying Insurance.'").]  Pursuant to the analysis in the preceding subsections, MHRRG and Scottsdale are entitled to a declaration that no coverage exists under the Scottsdale Policy because there is no dispute as to any material fact concerning the exclusion of coverage under the MHRRG Policy.  Fed. R. Civ. P. 56(a).

4.    **MHRRG and Scottsdale complied with their obligations of coverage, thus, the counterclaims for breach of contract fail as a matter of law.**

As demonstrated above, there is no dispute as to any material fact that the professional services exclusion and Limitation of Services Endorsement exclude coverage for the Incident and Wrongful Death Action.  [See supra, Sections III(A)(1)-(2).]  As a result, Seven Counties cannot produce evidence sufficient to establish that MHRRG or Scottsdale failed to comply with their obligations under the MHRRG Policy and Scottsdale Policy.  See Principal Life Ins. Co. v. Doctors Vision Ctr. I, PLLC, 2014 U.S. Dist. LEXIS 166495, at *31 (W.D. Ky. Dec. 1, 2014) ("Because no coverage existed under the Policy, the Court concludes as a matter of law that [the insurer] did not breach the Policy in refusing to pay the claim. Thus, the Court also concludes [it] is entitled to summary judgment on [the insured's] breach of contract counterclaim.").

MHRRG and Scottsdale are therefore entitled to summary judgment in their favor on Seven Counties' counterclaims.  Fed. R. Civ. P. 56(a).

**B.     MHRRG and Scottsdale are Entitled to a Declaration that Seven Counties was as an Additional Insured Under the Unambiguous Terms of the Hanover Policy, Which Afforded Seven Counties Primary Insurance.**

Based on the unambiguous terms of the Management Services Agreement, the Hanover Policy, and the MHRRG Policy, Seven Counties qualified as an additional insured under the Hanover Policy and was afforded primary insurance for any qualifying occurrence involving Uspiritus.

The Management Services Agreement expressly required that "[a]ll insurance maintained by Uspiritus . . . name [Seven Counties], its directors, officers, employees and agents as additional insureds" and "contain endorsements which reflect the primary liability of Uspiritus's insurance carrier for all covered losses . . . notwithstanding any insurance which may be maintained by [Seven Counties.]"   [Management Services Agreement, DE 1-1, Article XII Insurance, Page ID#: 28.]  The Hanover Policy, in turn, defines an "organization with whom [Uspiritus] agreed in a written contract . . . to provide insurance" as an "Additional Insured" with respect to any "liability for 'damages' caused, in whole or in part, by . . . the acts or omissions of those acting on [Uspritus's] behalf" in its performance as a behavioral healthcare organization.  [Hanover Policy, DE 1-2, Page ID# 307.]  Because Uspiritus agreed in the Management Services Agreement to insure Seven Counties and because any liability Seven Counties may possess with respect to the Incident arose from Uspritus's residential psychiatric services, Seven Counties qualified as an "additional insured" under the Hanover Policy.  [See id.]

The Hanover Policy and MHRRG Policy both make clear that the insurance afforded to Seven Counties under the Hanover Policy is primary to any insurance under the MHRRG Policy.  The Limitation of Services Endorsement to the MHRRG Policy

expressly states, "[t]his insurance is specifically excess over any coverage whereby [Seven Counties] has Additional Insured status under insurance provided by or issued to <u>Uspiritus</u>." [MHRRG Policy, DE 1-3, Limitation of Services Endorsement, Page ID#: 430.] Consistent with this provision, the Hanover Policy states that its "insurance is primary" unless certain conditions that are inapplicable here are present. [Hanover Policy, DE 1-2, Page ID#: 307.]

A primary carrier "insures against liability risk from $0 up to the policy limits" while an excess carrier "insures against liability above the limits of primary insurance." <u>Nat'l Sur. Corp. v. Hartford Cas. Ins. Co</u>., 493 F.3d 752, 753, n. 1 (6th Cir. 2007). Even assuming coverage was available to Seven Counties under the MHRRG and Scottsdale Policies, defense and indemnity must first come from Hanover up to the limits of coverage under the Hanover Policy. <u>See</u> <u>id</u>. Seven Counties' release of any claims against Hanover in settling the Wrongful Death Action does not mean it can recover its portion of the settlement amount from MHRRG or Scottsdale. This is because "[a]n excess insurer has no duty to contribute to a settlement or to the defense of the insured until the primary insurer[']s policy limits have been exhausted." <u>Continental Casualty Co. v. Great Am. Ins. Co</u>., 1994 U.S. App. LEXIS 14652, at *27 (6th Cir. June 10, 1994). In other words, MHRRG and Scottsdale were "not responsible for making sure [Hanover] fulfill[ed] its good faith obligations to [Seven Counties]." <u>Id</u>.

Because it is undisputed that the unambiguous provisions of the Hanover Policy afford Seven Counties additional insured status in light of the Management Services Agreement, MHRRG and Scottsdale respectfully ask that the Court find that Seven

Counties was insured on a primary basis under the Hanover Policy as a matter of law. Fed. R. Civ. P. 56(a).

## IV.  CONCLUSION

In order to survive summary judgment, the nonmovant must meet the movant's motion with "specific facts," beyond a "'scintilla of evidence,'" showing "there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Martin v. Cincinnati Gas and Elec. Co., 561 F.3d 439, 443 (6th Cir. 2009) (citing Anderson v. Liberty Lobby, 477 U.S. 242, 252 (1986)).  There is no genuine dispute as to any material fact that Scottsdale and MHRRG are entitled to (1) a declaration that no coverage exists for the Incident under the clear terms of the MHRRG Policy and the Scottsdale Policy, (2) a declaration that Seven Counties was an additional insured and was afforded primary insurance under the Hanover Policy, and (3) summary dismissal of Seven Counties' counterclaims for breach of the MHRRG Policy and the Scottsdale Policy.  Fed. R. Civ. P. 56(a).

Respectfully submitted,

STOLL KEENON OGDEN PLLC
300 West Vine Street, Suite 2100
Lexington, Kentucky 40507-1380
(859) 231-3000
(859) 253-1093 facsimile


By: /s/ Palmer G. Vance II
     Palmer G. Vance II
     Lilian M. Williams

COUNSEL FOR PLAINTIFFS,
SCOTTSDALE INSURANCE COMPANY AND
MENTAL HEALTH RISK RETENTION GROUP

## CERTIFICATE OF SERVICE

This will certify that the foregoing was served via electronic mail and/or U.S. Mail on April 17, 2024, to the following:

David A. Calhoun
Sean G. Williamson
Jacob M. Abrahamson
WYATT, TARRANT & COMBS, LLP
400 West Market Street, Suite 2000
Louisville, KY  40202
COUNSEL FOR DEFENDANT,
SEVEN COUNTIES SERVICES, INC.


/s/ Palmer G. Vance II
COUNSEL FOR PLAINTIFFS,
SCOTTSDALE INSURANCE COMPANY AND
MENTAL HEALTH RISK RETENTION GROUP

*4895-5994-2767.1*